# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

NATHANIEL J. WILLINGHAM,
        Appellant,

v.

DEPARTMENT OF THE NAVY,
        Agency.

DOCKET NUMBER
DC-1221-19-0722-W-1

DATE: July 31, 2024

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Nathaniel J. Willingham</u>, Jurupa Valley, California, pro se.

<u>Henry Karp</u>, Washington, D.C., for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner did not participate in the adjudication of this appeal.

### REMAND ORDER

The appellant has filed a petition for review of the initial decision, which dismissed his individual right of action (IRA) appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review,

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

VACATE the initial decision, and REMAND the case to the Washington Regional Office for further adjudication in accordance with this Remand Order.

## BACKGROUND

The appellant was employed with the agency's Military Sealift Command as an Equal Employment Opportunity (EEO) Specialist, GS-12. Initial Appeal File (IAF), Tab 6 at 20. On August 30, 2018, the agency proposed his removal for job-related issues. *Id*. at 26-29. Following the appellant's reply, the deciding official removed the appellant effective March 31, 2019, based on charges of improper use of records covered by the Privacy Act, misuse of his position, and three specifications of a failure to follow proper procedures charge.[2] *Id*. at 20-24. Thereafter, the appellant filed a complaint with the Office of Special Counsel (OSC), claiming that his removal was in reprisal for various whistleblowing disclosures and activities he had made and engaged in between December 2017 and January 2019. IAF, Tab 1 at 20. On July 24, 2019, OSC informed the appellant that it was terminating its inquiry into his allegations and that he had a right to seek corrective action from the Board. *Id*.

The appellant timely filed an IRA appeal with the Board, claiming that his removal was in reprisal for whistleblowing activity. *Id*. at 5. Specifically, he alleged that he made 11 disclosures to his supervisors, which concerned agency policy related to reasonable accommodation, the processing of EEO complaints, other alleged incidents relating to potential violations of laws, rules, or regulations, and alleged abuses of authority. *Id*. at 17-19. He also claimed that his removal was in reprisal for a complaint he filed with the Office of Inspector General (OIG) and EEO complaints he had filed, both on his own behalf and as a class agent as a part of a class action EEO complaint, for which he provided evidence and gave testimony. *Id*. at 5. The administrative judge issued an order

---

[2] The notice of proposed removal included four specifications to the failure to follow proper procedures charge; however, the deciding official only sustained three of those specifications. IAF, Tab 6 at 22, 27-28.

on jurisdiction, informing the appellant of his jurisdictional burden and stating that, because it appeared that the appellant exhausted his administrative remedy with OSC concerning his removal and his alleged protected disclosures and activities, no further evidence or argument was needed on the issue of OSC exhaustion.  IAF, Tab 3 at 1-3.

Following a response from the appellant to the order on jurisdiction, IAF, Tab 5, the administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction, IAF, Tab 8, Initial Decision (ID).  Specifically, the administrative judge considered the appellant's alleged disclosures and concluded that he failed to nonfrivolously allege that they were protected under 5 U.S.C. § 2302(b)(8).  ID at 5-8.  He also found that the appellant's alleged protected activity of participating in a class action EEO complaint as a class agent did not constitute protected activity under section 2302(b)(9)(B) as a matter of law, and that, although the appellant's OIG complaint constituted protected activity under section 2302(b)(9)(C), the appellant failed to nonfrivolously allege that such activity contributed to his removal.  ID at 8-12.  Therefore, the administrative judge found that the appellant failed to nonfrivolously allege Board jurisdiction over his IRA appeal, and he dismissed the appeal.  ID at 12.

The appellant has filed a petition for review of the initial decision, arguing that it was "unfair [for the administrative judge] to judge [his] allegations as frivolous" and that the administrative judge improperly assessed the merits of the appeal at the jurisdictional stage.  Petition for Review (PFR) File, Tab 1 at 3-4.  He also generally challenges the administrative judge's analysis of some of his claims regarding EEO processing issues and reasserts that his role as a class agent for a class action EEO complaint constitutes protected activity under section 2302(b)(9)(B).  *Id*. at 5.  Further, he challenges the administrative judge's conclusion that his OIG complaint was not a contributing factor to his removal.  *Id*. at 4.  He also submits a declaration from a coworker regarding his professional relationship with the appellant and his observations of the

appellant's duties and the alleged facts surrounding his disclosures. *Id*. at 7-10. The agency has filed a response. PFR File, Tab 3.

## DISCUSSION OF ARGUMENTS ON REVIEW

The Board has jurisdiction over an IRA appeal under the Whistleblower Protection Enhancement Act of 2012 if the appellant has exhausted his administrative remedies before OSC and makes nonfrivolous allegations that: (1) he made a disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action. *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016).

As an initial matter, we note that the administrative judge did not discuss the question of exhaustion in the initial decision. ID at 3-12. As mentioned above, however, he concluded in a prior order that the appellant showed that he exhausted his administrative remedy with OSC with respect to all of his claims. IAF, Tab 3 at 2. Neither party has challenged this conclusion, and we believe the record otherwise supports it. OSC's close-out letter summarizes the allegations brought to it by the appellant, which include, with varying degrees of specificity, all of the allegations that the appellant brought to the Board. IAF, Tab 1 at 20. Accordingly, although the administrative judge did not discuss exhaustion in the initial decision, we agree with his conclusion that the appellant's claims were all exhausted with OSC, and we discern no reason to disturb it. *See, e.g.*, *Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997) (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions).

<u>The appellant nonfrivolously alleged that he made four protected disclosures under 5 U.S.C. § 2302(b)(8).</u>

A nonfrivolous allegation of a protected disclosure is an allegation of facts that, if proven, would show that the appellant disclosed a matter that a reasonable person in his position would believe evidenced one of the categories of wrongdoing specified in 5 U.S.C. § 2302(b)(8). *Salerno*, 123 M.S.P.R. 230, ¶ 6. The test to determine whether a putative whistleblower has a reasonable belief in the disclosure is an objective one: whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions of the agency evidenced a violation of law, rule, regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *Id.*

As noted above, the administrative judge found that the appellant failed to nonfrivolously allege that he made a protected disclosure. ID at 5. Specifically, he found that the appellant's alleged disclosures regarding the agency's processing of EEO complaints and its interpretation of EEO policy and law concerned EEO matters covered under 5 U.S.C. § 2302(b)(1) and (b)(9), and that such matters are excluded from whistleblowing protection coverage under 5 U.S.C. § 2302(b)(8). ID at 5-7. He further found that other disclosures were allegations of wrongdoing too vague to rise to the level of protected disclosures. ID at 7-8. Although we agree with some of the administrative judge's conclusions, we believe, as explained below, that 4 of the appellant's 11 alleged disclosures are protected under section 2302(b)(8).

> *Of the appellant's three disclosures regarding reasonable accommodations, he nonfrivolously alleged that one of them is protected under 5 U.S.C. § 2302(b)(8).*

Below, the appellant alleged that he disclosed to his first- and second-level supervisors that the agency was not offering full-time telework as a reasonable accommodation, that telework as a reasonable accommodation was limited to

2 days per week, and that the agency was not offering telework of any kind for people with temporary disabilities in violation of disability law. IAF, Tab 1 at 17. The administrative judge concluded that, because these disclosures concerned EEO-related issues, and such matters are generally excluded from whistleblower protection coverage, the appellant failed to nonfrivolously allege that the disclosures were protected. ID at 5-6 (citing *Applewhite v. Equal Employment Opportunity Commission*, 94 M.S.P.R. 300, ¶ 13 (2003)). Although the administrative judge is correct that, generally, allegations asserting EEO violations under section 2302(b)(1) and (b)(9) are excluded from coverage under section 2302(b)(8), *see Applewhite*, 94 M.S.P.R. 300, ¶ 13; *see also Edwards v. Department of Labor*, 2022 MSPB 9, ¶¶ 13, 22-23, *aff'd*, No. 2022-1967, 2023 WL 4398002 (Fed. Cir. July 7, 2023), the appellant was not asserting that the agency violated these provisions as they related to his own rights, IAF, Tab 1 at 17. Rather, it appears that he made these allegations in his official capacity as an EEO Specialist, claiming that the agency was acting improperly with respect to its EEO function. *Id*. Therefore, his allegations are not of the kind generally contemplated by section 2302(b)(1) and (b)(9). As such, we consider them further below.

The appellant's allegations that the agency was not offering full-time telework as a reasonable accommodation and that telework as a reasonable accommodation was limited to 2 days per week appear to evidence a policy dispute with agency officials regarding what degree of telework is required as a reasonable accommodation. The Board has stated that "general philosophical or policy disagreements with agency decisions or actions are not protected unless they separately constitute a protected disclosure of one of the categories of wrongdoing listed in section 2302(b)(8)(A)." *See Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶ 8 (2015); *see also* 5 U.S.C. § 2302(a)(2)(D). Here, the appellant has not otherwise alleged that failing to offer full-time telework or limiting telework to 2 days per week as a reasonable accommodation

concerns any of the alleged categories of wrongdoing listed under section 2302(b)(8)(A). IAF, Tab 1 at 17. Thus, although we agree with the administrative judge that these disclosures are not protected, we emphasize that they are not protected not because they concern EEO matters, but rather because they concern policy disputes. *See Webb*, 122 M.S.P.R. 248, ¶ 8.

However, we find that the appellant nonfrivolously alleged that his disclosure regarding the agency's failure to offer telework of <u>any</u> kind to people with temporary disabilities in violation of disability law is protected because it alleges a violation of law. IAF, Tab 1 at 17. To make a protected disclosure of a violation of a law, rule, or regulation, an employee ordinarily must identify a specific law, rule, or regulation that was violated, which the appellant has not done here; however, the U.S. Court of Appeals for the Federal Circuit has stated that an appellant need not allege a violation of law with precise specificity "when the statements and circumstances surrounding the making of those statements clearly implicate an identifiable violation of law, rule, or regulation." *See Langer v. Department of the Treasury*, 265 F.3d 1259, 1266 (Fed. Cir. 2001).

Here, the appellant has cited an Equal Employment Opportunity Commission (EEOC) case, which discusses telework as a reasonable accommodation and provides the EEOC's articulation of the related law. IAF, Tab 1 at 17 (citing *Jody L. v. Department of the Air Force*, EEOC Appeal No. 0120151351, 2018 WL 619160, at *4-8 (Jan. 17, 2018)).[3] This citation, combined with the appellant's position as an EEO Specialist and his broader reference to disability law as it relates to an option of telework as a reasonable accommodation, warrants the conclusion that the appellant has implicated an identifiable law, rule, or regulation. IAF, Tab 1 at 17. Thus, we find that the appellant nonfrivolously alleged that he made a protected disclosure in this regard.

---

[3] The appellant's citation to this EEOC case appears to have some typographical errors, but it is clear he is referencing the case cited above.

*Of the appellant's four disclosures regarding the agency's processing of EEO complaints, he nonfrivolously alleged that one of those disclosures is protected under 5 U.S.C. § 2302(b)(8).*

The appellant asserted below that he disclosed to his first- and second-level supervisors that the agency failed to use a tracking system when processing EEO complaints, that agency human resources professionals exerted improper influence over the reasonable accommodation process, that the agency violated the EEOC's Management Directive (MD) 110, which concerns how an EEO counselor is supposed to respond to an initial complaint, and that the agency lied about its processing issues. *Id.* at 17-18. The administrative judge construed these alleged disclosures as ones concerning EEO matters and, thus, outside of the scope of protection under 5 U.S.C. § 2302(b)(8). ID at 5-7. Again, we disagree with the administrative judge's categorization of these claims because they concern alleged wrongdoing in the agency's EEO operations as they relate to the function of carrying out an EEO-based mission, and not the appellant's personal claim of EEO violations. Accordingly, we consider these claims below.

Regarding the disclosure that agency employees failed to properly use the tracking system for pending EEO complaints, the appellant alleged that this constituted gross mismanagement. IAF, Tab 1 at 17-18. The Board has stated that "gross mismanagement" is "more than de minimis wrongdoing or negligence," and that it does not mean "action or inaction which constitutes simple negligence or wrongdoing." *See Smith v. Department of the Army*, 80 M.S.P.R. 311, ¶ 8 (1998). Rather, an appellant discloses gross mismanagement when he alleges that a management action or inaction creates a substantial risk of significant adverse impact on the agency's ability to accomplish its mission. *Cassidy v. Department of Justice*, 118 M.S.P.R. 74, ¶ 8 (2012); *see Smith*, 80 M.S.P.R. 311, ¶ 8. Here, the appellant's allegation is more one of negligence; indeed, he refers to the agency's failure to use a tracking system as "negligence" and a "transgression []." IAF, Tab 1 at 17-18. There is

nothing in this disclosure that can be construed as an expression of a concern of "substantial risk of significant adverse impact on the agency's ability to accomplish its mission." *See Cassidy*, 118 M.S.P.R. 74, ¶ 8. Accordingly, we find that the appellant failed to nonfrivolously allege that this disclosure is protected.

The appellant also alleged below that, during the reasonable accommodation process, the agency allowed the Human Resources Board or a member thereof to "influence reasonable accommodation decisions using criteria outside of disability law." IAF, Tab 1 at 17. In the initial decision, the administrative judge appears to have combined this alleged disclosure with the appellant's claim that he informed the OIG that the agency allegedly violated the MD 110 by failing to maintain a "firewall" between the EEO function and the agency's defensive function. ID at 6 n.1; IAF, Tab 5 at 8. Neither party has challenged this construction of the appellant's claim on review, and we discern no inherent reason to find such a construction unreasonable. PFR File, Tabs 1, 3.

In considering this alleged disclosure, the administrative judge concluded that, because the MD 110 does not apply to the agency's reasonable accommodation decision-making process, a disinterested observer in the appellant's position as an EEO Specialist would not believe that such provisions applied to the agency's internal reasonable accommodation review and deliberations. ID at 6 n.1. The appellant has not challenged the conclusion regarding the MD 110's coverage, PFR File, Tab 1, and the administrative judge otherwise correctly applied the disinterested observer standard to conclude that the appellant did not have a reasonable belief that the actions of the agency evidenced the type of wrongdoing defined in section 2302(b)(8)(A), ID at 6 n.1; *see Salerno*, 123 M.S.P.R. 230, ¶ 6. Accordingly, we agree with the administrative judge that the appellant failed to nonfrivolously allege that this disclosure was protected.

The appellant also alleged below that he disclosed to his first- and second-level supervisors that the agency violated the MD 110 when processing EEO complaints because agency employees were not giving the proper information to complainants upon receipt of an initial complaint. IAF, Tab 1 at 17. Because the Board has held that there is no de minimis exception to an allegation that an agency has violated a law, rule, or regulation, we find that the appellant nonfrivolously alleged that this disclosure was protected. *See Hudson v. Department of Veterans Affairs*, 104 M.S.P.R. 283, ¶ 11 (2006) (stating that a disclosure of a violation of law, rule, or regulation is protected even if the disclosure is of a trivial or de minimis violation).

Regarding the appellant's alleged disclosure that he reported to his first- and second-level supervisors that the agency "lied to cover up their utilization" of the above-discussed "wrongful [EEO] processes," IAF, Tab 1 at 17, the Board has stated that disclosures must be specific and detailed, and not simply vague allegations of wrongdoing, *see Linder v. Department of Justice*, 122 M.S.P.R. 14, ¶ 14 (2014). Because the appellant has failed to provide any contextual detail to the alleged disclosure and has offered no more than the vague assertion that some unidentified agency official lied at some undefined point in time to some unspecified individual or organization, we find that the appellant failed to nonfrivolously allege that this disclosure is protected.

> *Of the four remaining disclosures concerning other allegations of violations of law, rule, or regulation, and abuses of authority, the appellant nonfrivolously alleged that two of them are protected are 5 U.S.C. § 2302(b)(8).*

The appellant alleged below that he disclosed to his first- and second-level supervisors that the agency's Complaints Manager "committed slander against one of the upstanding attorneys in the Virginia area." IAF, Tab 1 at 18. The administrative judge considered this alleged disclosure and concluded that it was a "vague allegation of wrongdoing that does not rise to the level of a protected whistleblower disclosure." ID at 7. He explained that there is no

"per se law, rule or regulation against slander; rather, it is a civil cause of action that must be presented to a trier of fact and proven upon a showing of actual harm or damage." *Id*. He further stated that the appellant's alleged disclosure reflects nothing more than his personal opinion about, and disagreement with, his coworker's alleged statement regarding the private attorney. *Id*. The appellant has not challenged this finding on review, and we discern no reason to disturb it.

The appellant also alleged below that he disclosed to his first- and second-level supervisors that two agency employees sent an EEO complainant an unredacted report of investigation (ROI) and investigative file containing private identifiable information in violation of regulations "dealing with the Privacy Act." IAF, Tab 1 at 18. The administrative judge considered this allegation and concluded that it was a "vague disclosure of agency wrongdoing that fails to meet the nonfrivolous pleading standard." ID at 7. He explained that the appellant's "bare assertion . . . fails to provide the requisite specificity needed to explain why a reasonable person in the appellant's position would believe such information should have been redacted or withheld." *Id*. We disagree. In a pleading below, the appellant asserted that he was disciplined for similar conduct and that he therefore had every reason to believe such conduct violated certain laws, rules, or regulations. IAF, Tab 5 at 12-13. We find that this assertion is sufficient to establish the appellant's reasonable belief that he was disclosing a violation of law, rule, or regulation. As such, we find that the appellant nonfrivolously alleged that he made a protected disclosure in this regard.

The remaining two alleged wrongdoings that the appellant asserts he disclosed to his first- and second-level supervisor include an allegation that he had recently learned that another supervisor had called him an offensive and profane name and had threatened to punch him in the face. IAF, Tab 1 at 18. He claimed that agency management "promised an [O]IG investigation" into the matter but "clandestinely" canceled it and orchestrated the appellant's transfer instead. *Id*. The appellant alleges that he disclosed this incident as an abuse of

authority. *Id*. His remaining alleged disclosure concerns a claim that an agency official "fabricated a false allegation that [he] violated the Hatch Act." *Id*. at 19. The administrative judge did not address either of these alleged disclosures, ID at 5-8, so we address them in the first instance here.

Regarding the alleged disclosure concerning the promised OIG investigation and the appellant's assertion that a failure to follow through with that promise constitutes an abuse of authority, the Board has explained that an employee discloses an abuse of authority when he alleges that a Federal official has arbitrarily or capriciously exercised power, which has adversely affected the rights of any person or has resulted in personal gain or advantage to himself or to preferred other persons. *Webb*, 122 M.S.P.R. 248, ¶ 10 n.3. Here, the appellant's disclosure can reasonably be construed to allege that agency management arbitrarily exercised its power to decline to pursue an OIG investigation, which ultimately benefited the supervisor who allegedly made the offensive and profane remarks. Given the minimal showing required to meet the nonfrivolous allegation standard, we find that the appellant has met his burden of nonfrivolously alleging that he made a protected disclosure in this regard. *See Usharauli v. Department of Health and Human Services*, 116 M.S.P.R. 383, ¶ 19 (2011) (stating that any doubt or ambiguity as to whether the appellant made a nonfrivolous jurisdictional allegation should be resolved in favor of finding jurisdiction); *see also Jessup v. Department of Homeland Security*, 107 M.S.P.R. 1, ¶ 10 (2007) (observing that the appellant's burden of making a nonfrivolous allegation is low and requires only a minimal sufficient showing).[4]

Regarding the appellant's alleged disclosure concerning the claim that an agency official falsely claimed that he violated the Hatch Act, the appellant

---

[4] The Board in *Jessup* relied on the above-stated principle as it relates to an appellant's burden to nonfrivolously allege that his disclosure was a contributing factor in a personnel action. *Jessup*, 107 M.S.P.R. 1, ¶ 10. Nonetheless, the nonfrivolous allegation standard is the same whether it is applied to an allegation that an appellant made a protected disclosure or to an allegation that such a protected disclosure was a contributing factor in a personnel action.

appears to claim that this action constitutes an abuse of authority. IAF, Tab 1 at 18-19. However, the appellant's assertion does not contain any allegation that the agency official who allegedly claimed that the appellant violated the Hatch Act obtained any personal gain or advantage as a result of his claim. *Id*.; *see Webb*, 122 M.S.P.R. 248, ¶ 10 n.3. As such, we find that the appellant failed to nonfrivolously allege that this disclosure was one of an abuse of authority, and further find that the allegation does not include any other assertion of wrongdoing described in section 2302(b)(8)(A). Accordingly, we find that the appellant failed to make a nonfrivolous allegation in this regard.

To summarize, we find that the appellant nonfrivolously alleged that he made a protected disclosure under 5 U.S.C. § 2302(b)(8) when he alleged that he disclosed to his first- and second-level supervisor that: (1) the agency failed to offer telework of any kind to people with temporary disabilities in violation of EEOC law; (2) the agency violated the MD 110 when processing EEO complaints because agency employees were not giving the proper information upon receipt of an initial complaint; (3) two agency employees sent an EEO complainant an unredacted ROI and investigative file containing private identifiable information in violation of regulations "dealing with the Privacy Act"; and (4) agency management promised an OIG investigation when it learned that a supervisor had called the appellant an offensive and profane name and threatened to punch him in the face, but "clandestinely" canceled it and orchestrated the appellant's transfer instead.

<u>The administrative judge correctly found that the appellant nonfrivolously alleged that he engaged in protected activity under 5 U.S.C. § 2302(b)(9)(C) when he filed an OIG complaint and also correctly found that the appellant failed to nonfrivolously allege that his actions as a part of a class action EEO complaint constitute protected activity under 5 U.S.C. § 2302(b)(9)(B).</u>

The appellant also asserted below that he engaged in protected whistleblowing activity when he participated in a class action EEO complaint as a class agent, giving testimony and evidence in support of the complaint, and when

he filed an OIG complaint. IAF, Tab 1 at 5, Tab 5 at 4-9. The administrative judge appears to have implicitly found that the OIG complaint constituted protected activity, and we agree with that conclusion. ID at 10; *see Fisher v. Department of the Interior*, 2023 MSPB 11, ¶ 8 (finding that disclosures of information to an agency's OIG are protected regardless of their content, as long as such disclosures are made "in accordance with applicable provisions of law").

Regarding the appellant's allegation that he gave testimony and evidence as a class agent who was a part of a class action EEO complaint, the appellant claims that this constitutes protected activity under section 2302(b)(9)(B). IAF, Tab 1 at 16. Section 2302(b)(9)(B) protects an employee who testifies for or otherwise lawfully assists any individual in the course of exercising any appeal, complaint, or grievance right granted by any law, rule, or regulation. 5 U.S.C. § 2302(b)(9)(B).

In assessing this allegation, the administrative judge found that, although filing an EEO class complaint with the EEOC involves a right to complain, a right that the Board acknowledges is related to the language in section 2302(b)(9)(B), *see Linder*, 122 M.S.P.R. 14, ¶¶ 7, 9, the appellant here is "personally involved in the proceeding . . . [and] like all other proposed class members, is seeking to have his EEO rights vindicated," ID at 9. He reasoned that the appellant's role, therefore, "is dissimilar from other types of protected activity the Board has identified as within the aegis of section 2302(b)(9)(B), namely, serving as a witness in *another employee's* appeal, complaint, or grievance, or representing *another employee* in any such proceeding." ID at 10 (emphasis in original). Rather, the administrative judge concluded that the appellant's allegation falls under section 2302(b)(1) and (b)(9)(A)(ii) because he "has a personal stake in the viability of the underlying EEO litigation as a litigant." *Id.* As such, he found that this alleged activity fails, "as a matter of law," to constitute protected activity under section 2302(b)(9)(B). ID at 8.

On review, the appellant challenges these findings, asserting that the administrative judge "ignored that [he] already had an individual [EEO] case," and that he was "help[ing] others by representing them in the class action." PFR File, Tab 1 at 5. He further claims that his relief was not enhanced by filing the class action complaint and that, for the administrative judge to find that his participation in the class action complaint would benefit him is to ignore his individual EEO complaints. *Id*. The appellant's arguments are unavailing. Although the administrative judge did not address the appellant's individual EEO complaints, the Board has long held that an administrative judge's failure to discuss all of the evidence specifically does not mean that he did not consider it in reaching his decision. *Marques v. Department of Health and Human Services*, 22 M.S.P.R. 129, 132 (1984), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985) (Table). Moreover, the appellant has not explained how he would not benefit from a class action EEO complaint, despite having his own individual EEO complaint, as it is conceivable that a class action complaint could result in broader relief meant to address the class that would not have been considered for his own complaint. Accordingly, we discern no error in the administrative judge's conclusion that the appellant's activity does not constitute protected activity under section 2302(b)(9)(B), and instead is more closely aligned with the activity described in section 2302(b)(9)(A)(ii). ID at 10. Because the Board lacks jurisdiction over an alleged violation of section 2302(b)(9)(A)(ii), we agree with the administrative judge that the appellant failed to nonfrivolously allege that he engaged in protected activity in this regard. *See Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 7 (2013).

The appellant nonfrivolously alleged that his protected disclosures were a contributing factor to the agency's decision to remove him, but we agree with the administrative judge that the appellant failed to nonfrivolously allege that his OIG complaint was a contributing factor to his removal.

Because the appellant nonfrivolously alleged that four of his disclosures were protected under 5 U.S.C. § 2302(b)(8) and that he engaged in activity

protected under 5 U.S.C. § 2302(b)(9), he must next nonfrivolously allege that at least one of those disclosures or his activity was a contributing factor to the personnel action at issue. *See Salerno*, 123 M.S.P.R. 230, ¶ 5. To satisfy the contributing factor criterion at the jurisdictional stage, the appellant need only raise a nonfrivolous allegation that the fact of, or the content of, the protected disclosure was one factor that tended to affect the personnel action in any way. *Id.*, ¶ 13. One way to establish this criterion is the knowledge/timing test, under which an employee may nonfrivolously allege that the disclosure was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official who took the personnel action knew of the disclosure and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Id.*

Here, the appellant alleged that he made all four of the disclosures to his first- and second-level supervisors between December 2017 and March 2018. IAF, Tab 1 at 17-19. The record shows that the appellant's second-level supervisor was the proposing official in the appellant's removal and that he proposed the action less than a year later, on August 30, 2018. IAF, Tab 6 at 26-29. The Board has stated that a personnel action that occurs within 1 to 2 years of the protected disclosure satisfies the timing portion of the knowledge/timing test. *Salerno*, 123 M.S.P.R. 230, ¶ 14; *see Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 21 (2015). Accordingly, we find that the appellant has met the knowledge/timing test and, therefore, has nonfrivolously alleged that his four protected disclosures were a contributing factor to his removal.

Regarding the OIG complaint, the record establishes that the complaint was filed on March 2, 2018, but the appellant does not appear to have alleged below that any agency official responsible for his removal was aware that he had filed the complaint. IAF, Tab 1 at 5, 16, Tab 5 at 39-43. Thus, as noted above, the

administrative judge found "no nonfrivolous allegation any official involved in his removal was knowledgeable of this filing," and he concluded that the appellant failed to meet the knowledge/timing test. ID at 10-11. Nonetheless, he considered additional factors relevant to the contributing factor question as an alternative to the knowledge/timing test, such as the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing or protected activity was personally directed at the proposing or deciding official, and whether any such individuals had a desire or motive to retaliate against the appellant. ID at 5 (citing *Rumsey v. Department of Justice*, 120 M.S.P.R. 259, ¶ 26 (2013)). He acknowledged that, although the proposing official—the appellant's second-level supervisor—was mentioned in the OIG complaint, the appellant had an opportunity to raise a claim of reprisal in response to the proposed removal and did not do so. ID at 11. He further stated that the basis for the agency's removal action was "facially" strong and that there was no other circumstantial evidence in the record nonfrivolously linking the appellant's OIG complaint with his removal for cause a year later. ID at 12. Accordingly, he found that the appellant failed to nonfrivolously allege that his OIG complaint was a contributing factor in the agency's removal action. *Id*.

On review, the appellant asserts, for the first time, that OIG contacted both the proposing and deciding officials and that they were both aware of the complaint. PFR File, Tab 1 at 4. Although the appellant did not allege below that the proposing and deciding officials had knowledge of the OIG complaint, and the Board will generally not consider an argument raised for the first time on review absent a showing that it is based on new and material evidence that was not previously available despite the party's due diligence, *Clay v. Department of the Army*, 123 M.S.P.R. 245, ¶ 6 (2016), we will consider the appellant's new argument on this jurisdictional issue because jurisdiction is always before the Board and may be raised by any party or sua sponte by the Board at any time during Board proceedings, *see Lovoy v. Department of Health and Human*

*Services*, 94 M.S.P.R. 571, ¶ 30 (2003). Here, even though the appellant now claims that relevant agency officials had knowledge of the OIG complaint, he has still not alleged when they gained that knowledge. PFR File, Tab 1 at 4. Because they could have conceivably gained knowledge of the complaint after his removal was proposed or effected, we, like the administrative judge, cannot find that the appellant has met the knowledge/timing test.

As such, we turn to the administrative judge's assessment of the alternative methods to determine whether the appellant nonfrivolously alleged contributing factor. As discussed above, the administrative judge considered the relevant factors set forth in Board precedent, such as *Rumsey.* ID at 11-12. The appellant has not specifically challenged this analysis, except to argue that the administrative judge inappropriately considered the merits of the case when he concluded that the agency's removal action was facially strong. PFR File, Tab 1 at 3. We discern no error in the administrative judge's basic assessment of the underlying removal action at the jurisdictional stage because, when an appellant has failed to meet the knowledge/timing test, the strength or weakness of that action is a factor to consider when determining whether the appellant nonfrivolously alleged that his OIG complaint was a contributing factor to his removal. *See Rumsey*, 120 M.S.P.R. 259, ¶ 26. We agree with his assessment that, at least facially, the removal action appears to be supported, and further add that the appellant has not alleged any set of facts that, if true, support a conclusion that either the proposing or deciding officials had a desire or motive to retaliate against him. As such, we will not disturb the administrative judge's conclusion that the appellant failed to nonfrivolously allege that his OIG complaint was a contributing factor to his removal.

In sum, we find that the appellant nonfrivolously alleged that he made four protected disclosures that were a contributing factor to his removal. As such, we find that the appellant has established jurisdiction over this appeal.[5]

**ORDER**

For the reasons discussed above, we grant the appellant's petition for review, and we remand this case to the Washington Regional Office for further adjudication in accordance with this Remand Order. In the remand initial decision, the administrative judge may reincorporate prior findings as appropriate, consistent with this Remand Order.

*Gina K. Grippando*

FOR THE BOARD: _____

Gina K. Grippando
Clerk of the Board

Washington, D.C.

_____

[5] The appellant has submitted with his petition for review a declaration from a coworker regarding his relationship with the appellant and his observations of the appellant's duties and the alleged facts surrounding his disclosures, as discussed above. PFR File, Tab 1 at 7-9. Under 5 C.F.R. § 1201.115, the Board generally will not consider evidence submitted for the first time with a petition for review absent a showing that it was unavailable before the record closed before the administrative judge despite the party's due diligence. *Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 213-14 (1980). Here, the appellant claims that he did not submit the declaration below because he believed the administrative judge was not yet considering the merits of the appeal. PFR File, Tab 1 at 4. Implicit in this statement is the appellant's suggestion that the newly submitted declaration goes to the merits of his appeal. Additionally, he has not claimed that the information contained in the declaration was unavailable before the record closed. Based on these reasons, we decline to consider the declaration.